# EXHIBIT "H"
# (Part 1)

```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF NEW YORK
 2

 3   ------------------------------------X
     EVART ENTERPRISES, INC.,             :   07-CV-5441 (DLC)
 4                                        :
                      Plaintiff,          :   September 11, 2007
 5                                        :
                 v.                       :   500 Pearl Street
 6                                        :   New York, New York
     GENTLEMAN'S VIDEO, INC., et al.,     :
 7                                        :
                      Defendants.         :
 8   ------------------------------------X

 9
            TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
10              BEFORE THE HONORABLE DOUGLAS F. EATON
                   UNITED STATES MAGISTRATE JUDGE
11

12   APPEARANCES:

13
     For the Plaintiff:             H. NICHOLAS GOODMAN, ESQ.
14                                  Quirk & Bakalor
                                    845 Third Avenue
15                                  New York, New York  10022

16
     For the Defendant:             EDWARD RUDOFSKY, ESQ.
17                                  Zane & Rudofsky
                                    601 West 26th Street
18                                  New York, New York  10001

19

20   Court Transcriber:             CARLA NUTTER
                                    TypeWrite Word Processing Service
21                                  356 Eltingville Boulevard
                                    Staten Island, New York 10312
22

23

24

25

     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

2

1       THE COURT:  07-CV-5441.
2       All right.  We're here with Nicholas Goodman for
3  plaintiff Evart Enterprises and Edward Rudofsky for defendants
4  Gentleman's Video, et al.,
5       Mr. Goodman, what's the status of this case?
6       MR. GOODMAN:  Okay, Judge, just to go back to your
7  initial comments about the two cases pending, there was a
8  previous case and I don't have the index number in front of me.
9  I could find it.
10      THE COURT:  I have it.  06-CV-13207.
11      MR. GOODMAN:  Okay.  Thank you, Judge.
12      That case was settled by a settlement agreement dated
13 January 29, 2007 and there was subsequently a consent order and
14 permanent injunction signed by Judge Cote in February.  In
15 March I sent a letter to Mr. Rudofsky indicating a default
16 under the settlement agreement and my threat to proceed with
17 contempt proceedings.  I have not since followed through on
18 that threat and we are not here pursuing contempt remedies
19 under that settlement.  So that basically all that's here
20 before you today is the second case, that's 07-CV-5441.  That
21 is a case in which Mr. Rudofsky and I were unable to come to
22 any kind of agreement in the period of April or May.  The first
23 complaint is filed and served in June.  There was an extension
24 of time granted by Your Honor until the end of July to answer
25 or move.  Mr. Rudofsky made a motion.  I then filed an amended

                                                                3

1  complaint and that amended complaint is before you today and
2  the defendants have not yet answered that amended complaint.
3  In fact, their time to answer doesn't run until tomorrow and
4  obviously we would be amenable to a reasonable adjournment or
5  extension of the time to answer.  So what you have before you
6  today is just that second case and the second case involves two
7  different copyright infringements and we're alleging, also,
8  trademark Lanham Act infringements.
9           Your question was as to the status of settlement.
10 It's been clear from the beginning that Mr. Rudofsky and his
11 clients have sought to convince me and apparently to convince
12 the Court also that the second action in their words is not
13 warranted or should not proceed, that they would like it not to
14 happen.  I have attempted at various points including recently
15 last week to try to translate that into a settlement
16 negotiation over money.  There has not been up until just prior
17 to this conference an offer by the defendants in settlement and
18 just to let you know more accurately where we're at today, last
19 week on Tuesday I spoke to Mr. Rudofsky and I said, look, I
20 know you want to bring your client to the conference in front
21 of Magistrate Eaton, I know you want to have some kind of
22 discussion but you've got to make some kind of offer, are you
23 going to make an offer of settlement because otherwise I don't
24 see that it's worth me bringing my client in or pursuing that
25 whole course if there isn't going to be any offer at all and

<pre>
                                                                  4

 1   that was on Tuesday.  On Friday I got an e-mail from Mr.
 2   Rudofsky saying, I'm talking to my clients, I'll get you an e-
 3   mail shortly to tell you where we're at in effect.  I never got
 4   that second e-mail and Mr. Rudofsky told me this morning that
 5   he did in fact send that e-mail.  I never saw it.  So he has
 6   now conveyed to me what is apparently in that second e-mail
 7   that I didn't get which was a very minimal settlement offer.
 8   It really amounts to a few thousand dollars literally.
 9   Obviously, I haven't had a chance to convey that to my client
10   but I can tell you that it's certainly not sufficient to settle
11   this case or really not sufficient to even stimulate further
12   serious discussions.
13              So that's where we're at.  We have as of, you know, a
14   few minutes ago the conveyance of a very minimal settlement
15   offer.  We are certainly willing on our end as a plaintiff to
16   engage in discussions.  I've told Mr. Rudofsky repeatedly that
17   we would be interested in settling this case.  We're not trying
18   to push thing and put anybody out of business or "hurt anybody"
19   but there has to be a recognition of the serious copyright
20   infringements that have taken place.  The clear likelihood -- a
21   high probability that there's going to be a finding of
22   willfulness, the mere certainty that there's going to be a
23   finding for the plaintiffs for the attorneys fees expended,
24   those attorneys fees are already in excess of the amount of the
25   offer that was conveyed to me.  I don't know the exact number
</pre>

```
                                                                    5
 1   but that can be ascertained pretty quickly.
 2             So, you know, at the point that the defendants want
 3   to step up and recognize that there are two very serious
 4   infringements here, the high likelihood of a finding of
 5   willfulness and attorneys fees, statutory damages, you know,
 6   I'm sure we can talk but that point hasn't arrived yet and so
 7   in the absence of going forward and having a serious settlement
 8   discussion we're ready to enter a scheduling order and get
 9   discovery lined up and get a trial date set for the future and
10   move forward.
11             THE COURT:  Well, all right.  I see that neither side
12   has brought a decision-maker from the client.
13             MR. RUDOFSKY:  May I address that?
14             THE COURT:  Sure.
15             MR. RUDOFSKY:  Good morning.
16             First of all, I did want to start on that point.  I
17   somewhat want to apologize to the Court.  The plan was for Mr.
18   Esposito to be here.  Unfortunately, Mrs. Esposito was severely
19   injured and hospitalized and I spoke to him as late as about
20   7:30 or so New York time last night and he said he was just
21   unable to leave California and leave her.  I have his phone
22   number.  He is available, notwithstanding the time difference,
23   if there was anything to discuss.  So I apologize to the Court
24   for that because certainly one of the reasons we had scheduled
25   a conference for today was to enable him to make arrangements
```

6

1  to come and unfortunately he couldn't do that.
2              Secondly, I do want to reaffirm what counsel said.  I
3  absolutely sent -- and I don't know why he didn't receive it or
4  didn't see it -- him an e-mail last Friday night after
5  discussion with the client outlining the settlement proposal
6  that we were prepared to go forward with or at least to discuss
7  so it's unfortunate that he didn't see it but he says he
8  didn't.
9              Let me back up now if I may.  The first case was
10 commenced, I believe, in November 2006 and we settled it pre-
11 answer in good faith, entered into a settlement agreement,
12 entered into a consent injunction which we have carried forward
13 with.  We received a letter from Mr. Goodman on March 29th in
14 which he complained about several alleged breaches or possible
15 breaches of that agreement including -- and, this, I think is
16 important -- the facts upon which the present complaint is
17 based -- the new complaint.  We immediately or very quickly if
18 not immediate in the sense of the same day or two days later
19 but very, very soon thereafter, we compiled a list of
20 everything that the defendants had done to comply with the
21 prior settlement agreement.  There were one or two ministerial
22 items that had to be attended to; filings of an affidavit of
23 compliance or some such thing with the court.  We took care of
24 that.  We wrote to Mr. Goodman, we outlined everything that had
25 been done --

7

1   THE COURT:  I've read that letter of April 26th.
2   MR. RUDOFSKY:  I'm sure Your Honor has.
3   THE COURT:  Yes.
4   MR. RUDOFSKY:  Notwithstanding that, the plaintiffs
5   decided to go ahead with a second suit and asked if we would
6   accept service of a complaint which we eventually did, of
7   course, but when we realized the plaintiffs wanted to bring --
8   the intention was to bring a second action rather than to treat
9   the situation as enforcement of the original stipulation and
10  consent decree we immediately wrote to Judge Cote and requested
11  a conference.  We have the complication of the second action
12  because plaintiff has chosen to file a second action which,
13  whether it's a meritorious action or not, I guess one would say
14  was there right.  So we end up talking about two actions but
15  from our point of view we entered into a settlement which
16  includes a provision for notice of defaults and an opportunity
17  to cure defaults expressly.  We were notified of the default,
18  we cured it or say we cured it.  The client is prepared to
19  explain, whether it's a hearing or a trial or a settlement
20  conference, or whatever forum or venue, is prepared to explain
21  everything that he has done and if requested -- you know, if
22  he's asked he'll say whether he's willing to do and he tells me
23  he is willing to do anything within reason to police the
24  original settlement which was a substantial settlement of
25  $75,000.00 and was intended to buy peace between these two

8

1  sides and the words that we used in our letter was that we did
2  not think the second suit was necessary or appropriate and that
3  is really our position and we think there was a settlement, we
4  don't think that the second suit should go forward.  If it's
5  going to go forward, of course, we're going to defend it.
6           Complicating the settlement is the fact that the
7  client tells me and I represent to Your Honor that at least
8  this is his position and if he was here he would tell you
9  himself that he doesn't have the money to deal with the kind of
10 settlement demand that is being made which is a larger demand
11 in amount than the first settlement.  So it's not only
12 substantial, it's even more substantial and so putting aside
13 any analysis of the merits or the risk of litigation, he
14 doesn't have the money.
15          We also would like to settle this.  We thought we had
16 settled it.  If there are problems as there inevitably are or
17 often are in such cases with policing the settlement we don't
18 think those problems are to be solved with a second lawsuit,
19 they're to be solved with either telling us what else the
20 plaintiff would like us to do to police the first settlement
21 and implement the first settlement or if we are contemptuously
22 violating the consent order which we do not believe is remotely
23 the case, to move to hold us in contempt but they haven't done
24 that.  They threatened to do it, they didn't do it.  I think we
25 made a clear showing not only that we weren't in contempt but

9

1  that we hadn't really violated the order and there may well be
2  product out there that our client has sought to recall, has
3  offered to substitute replacement product, third parties/fourth
4  parties who have the product who are not complying with the
5  recall or are continuing to offer this line that the plaintiff
6  objects to.  The end result, I think, is going to be testimony
7  that our client has done as much as he possibly can and
8  certainly as much as he could reasonably be required to do.  He
9  tells me this has cost him in lost sales and enforcement
10 efforts well in excess of $100,000.00, that he can't do anymore
11 and that Mr. Goodman was explaining to me earlier that even as
12 late as whatever date he was referring to, May or July or
13 something, someone put up this line on the internet and it's
14 hard to believe -- it's impossible for him to believe that my
15 client wasn't the source of it.  That's not true and my client
16 is able to establish that he has sent a recall notice and taken
17 down the line and done everything that he believes is
18 reasonable to satisfy the plaintiff and if there is something
19 else that he should be doing, you know, there shouldn't be the
20 litigation form of twenty questions.
21         THE COURT:  Well, you know, I think this is --
22         MR. RUDOFSKY:  So that's our position.  We would love
23 to settle this but (a) we're not sure what they want us to do
24 on the non-financial side other than what we've done and on the
25 financial side at this moment we don't have the wherewithal to

10

1  satisfy their financial demands and on that basis alone the
2  parties are too far apart to settle it certainly today.
3           THE COURT:  Well, I think that's right and, you know,
4  I think Judge Cote was hoping that somehow there could be a
5  settlement.  It sounds to me as if the non-monetary part
6  probably could be worked out but the monetary part, the parties
7  are just way apart and, therefore, I think Judge Cote is going
8  to be the one who is going to decide whether this second case
9  can proceed and I think all I can do is set up a scheduling
10 order.  Mr. Goodman is willing to give you a little time beyond
11 tomorrow, September 12th, and I don't know whether you're going
12 to put in an answer or a motion to Judge Cote.  Do you have any
13 idea what the first step would be?
14          MR. RUDOFSKY:  Well, we will make a motion with
15 respect to the amended complaint.  We had moved with respect to
16 the first complaint.  Counsel cured what we perceived to be a
17 defect in that pleading.
18          THE COURT:  Right.  So now we have an amended --
19          MR. RUDOFSKY:  So now we have an amended complaint
20 and we'll move on the grounds of the prior settlement,
21 certainly, and see what comes of that.
22          THE COURT:  Well, if we're sure that it's going to be
23 a motion, I don't know that there's any need for discovery
24 before that motion is heard by Judge Cote.  What's plaintiff's
25 view on that?

11

1   MR. GOODMAN: Well, I am having a hard time
2   understanding what the grounds of the motion would be; that a
3   motion to dismiss a complaint that alleges two copyrighting
4   infringements on the grounds that that case cannot proceed
5   because a prior settlement was entered and the remedy should be
6   pursued under that settlement? I'm not sure that --
7   THE COURT: I think that's essentially it and Judge
8   Cote may agree or disagree but that's her call. She may for
9   all I know feel that the whole point of that consent order that
10  she signed was to handle situations like this. On the other
11  hand, she may agree with plaintiff that it's plaintiff's right
12  to pursue this as a new lawsuit without calling it a violation
13  of the old consent agreement and my only question is is there
14  any sort of limited preliminary discovery that's needed before
15  Judge Cote decides that motion? If not, I would think that we
16  would schedule nothing today except a briefing schedule for
17  Judge Cote and then after she makes her decision then we could
18  have another conference here or even by telephone or, perhaps,
19  the attorneys could just get together a scheduling order if in
20  fact Judge Cote says, yes, this is going to be a full-fledged
21  second lawsuit and then there will be deadlines for fact
22  discovery, expert discovery and a deadline for motions for
23  summary judgment and somewhere in this whole process maybe the
24  parties will reach some agreement. The big sticking point
25  seems to be the amount of money and if that could be solved I

                                                                  12

1   have a feeling that the non-monetary portions could be settled
2   --
3             MR. GOODMAN:  Your Honor.
4             THE COURT:  Yes.
5             MR. GOODMAN:  If I could?  I'm sorry, I didn't mean
6   to interrupt.
7             It seems to me that even if -- and I think that it's
8   very doubtful it would go that way -- but even if Judge Cote
9   determines somehow that the second action could not proceed as
10  a second action but remedies were to be pursued under the
11  settlement agreement, I don't see really how that could happen.
12  But assuming that happened there clearly are two copyright
13  infringements that happened --
14            THE COURT:  Right.
15            MR. GOODMAN:  I don't think there's any doubt about
16  it.  I don't think Mr. Rudofsky or his clients even dispute
17  that.  They may say that they were innocent, they may say we
18  took as many steps as we could to stop that from happening and
19  so forth but there has to be even under the terms of the
20  settlement agreement if you want to look at it through that
21  prism some remedy for what they did.  Let's not forget that one
22  of these two infringements occurred for the first time after
23  the settlement agreement was signed.  They released a new film
24  four days after they signed off on the settlement agreement.
25            THE COURT:  The two ones I know about had been

13

1  abbreviated as Hart and Fox.
2          MR. GOODMAN:  Fox came out after the settlement
3  agreement was entered into.  It didn't even exist prior.  It
4  has a purported 2007 copyright notice on it from the defendants
5  and that's why we're talking about willfulness, that's why
6  we're talking about a number of other issues.
7          Clearly, there would need to be discovery under any
8  rubric for what happened as Mr. Rudofsky eluded to.  Some time
9  in the neighborhood of just a few weeks ago my clients got a
10 telephone call, do you realize the entire Golden Age of Porn
11 line including the titles from the first action are available
12 now on the internet on a site called Smashbox.com.  The whole
13 line is there.  It came up for the first time -- they found it
14 for the first time in August.  Apparently, it had been put on
15 the internet in May 2007.  They've probably purchased this
16 product, you know, somewhere between ten and fifteen times and
17 that's only the times they actually documented purchases.  So
18 there's a world of information that we would need concerning
19 remedies no matter whether you're looking at those at remedies
20 under the settlement agreement or remedies or the new action.
21 We would like to proceed with that and I don't think it's
22 useful to go back to Judge Cote with a motion and to enter a
23 briefing schedule now in the absence of that kind of discovery
24 because we're just going to get there one way or the other
25 anyway and I think it's worth me saying here to you and to Mr.

                                                                    14

1  Rudofsky, I made a judgment that contempt -- the showing
2  necessary for a finding of contempt might not be made; it might
3  be made or it might not be made and the issue there was whether
4  the copyrights for the two new infringements were in the name
5  of Evart and in fact they were in a different name because
6  Evart acquired them through a chain of title and they weren't
7  originally registered under the name Evart.  So I made a
8  determination that a showing of contempt would be an open
9  question that we didn't want to pursue but, nonetheless, there
10 are infringements there.  The fact that they don't amount to
11 contempt under the standards that are applied to contempt
12 proceedings doesn't mean they weren't copyright infringements,
13 doesn't mean they weren't willful, doesn't mean that there
14 isn't remedy due and we pursue the second action.  All of this
15 was discussed more or less and there were a bunch of e-mails
16 and telephone conferences and so forth that we had over a
17 period of months.
18         So that's where we're at.  So I think it would --
19         THE COURT:  Well, what if it turns out despite your
20 wishes that Judge Cote says, I've accepted the second case as a
21 related case but I don't want it to go forward as an
22 independent action, I want it to be pursued solely as a
23 contempt type of proceeding?  If that is her decision then your
24 settlement evaluation may go down because you may feel that
25 although you don't like it there are some legal impediments to

```
                                                            15
 1  winning on the contempt theory because the copyright of Hart
 2  and Fox was originally obtained by a non-party and then somehow
 3  acquired by this defendant and, you know, you'll just have to
 4  make an evaluation if that changes your settlement posture and
 5  I just don't see that there's any urgency to taking this
 6  discovery.  It seems to me logical that the first question is
 7  the one that will have to be decided by Judge Cote as to
 8  whether this is being handled solely as a contempt or as
 9  plaintiff would prefer it, a complete second action.  I don't
10  think any discovery is needed by either side at the moment.  I
11  don't think there's a danger that evidence is going to be lost
12  or memories fade and both sides seem to think that it's
13  significant to know whether or not Judge Cote is going to allow
14  this as a full-fledged second action so let's find out and then
15  it may well be that the discovery is more or less the same
16  discovery no matter what her decision is but at least the
17  parties will know what her feeling is, what her ruling is and
18  before they embark on that discovery maybe they will have a
19  chance to settle the case if they feel that her decision has
20  somehow made the case less valuable or more valuable for the
21  plaintiff.
22          So my inclination is just to set a briefing schedule
23  for Judge Cote.  I have a feeling that she distinctly saw that
24  possibility coming and was hoping that the parties could just
25  reach a settlement and avoid that briefing but, you know, it
```