# EXHIBIT "H"
# (Part 2)

                                                                16

1    does seem that the parties think that it's important to know
2    whether this is just a contempt action or whether it's a second
3    action and I guess that Mr. Esposito is worried that similar
4    problems may crop up in the future and he would like to have a
5    ruling by Judge Cote that essentially says those sort of events
6    if they happen will be probably handled under the first docket
7    number.  I don't exactly know why both sides think that's so
8    important but they do.
9              MR. GOODMAN:  Your Honor, just to be clear, I do not
10   think it's so important.  I think my point was that it doesn't
11   matter what you call this.
12             THE COURT:  Yes.
13             MR. GOODMAN:  If we're going to proceed under the
14   heading of contempt or we're going to proceed under a second
15   action, we have actions undertaken by the defendants that
16   caused harm that have to be addressed and I don't think that if
17   we call it contempt we may have a different procedural posture
18   in the case slightly but all the questions are ultimately going
19   to be the same.  I can't imagine that this Court through you or
20   Judge Cote or any other Justice of this Court is going to say,
21   well, these two copyright infringements that are essentially
22   conceded will not be remedied.  That isn't going to happen.  So
23   I don't think it makes a particular large amount of difference,
24   I don't see the great importance of deciding which way this
25   thing is going to go so-to-speak and that's why I was saying

17

before and I would say again that I do think it's important that there's no question in my mind at least that we're going to get to discovery issues about the number of sales and the willfulness and all the usual questions that come up in a copyright infringement case, we're going to get there one way or another anyway and that's why I'm urging that we go ahead and schedule that.

THE COURT: Well, you know, I don't know what Judge Cote is going to say and I don't know exactly what argument Mr. Rudofsky is going to make but suppose Judge Cote says, I have some familiarity with this case and I think that the $75,000.00 was to bring about a regime where future disputes would be handled as governed by the consent decree and that the extra money may have had various different purposes but one purpose was sort of to persuade Evart to not bring a lawsuit every time they were seeing something on the internet or offered for sale and instead to channel itself into the context of the consent decree, possibly amending the consent decree from time-to-time but, I don't know, is that part of your argument, Mr. Rudofsky? I mean, you know --

MR. RUDOFSKY: Yes, Your Honor.

My argument -- aside from any legal consequences and the ultimate remedies that could be granted, I think there's a world of practical difference and case administration difference between a plenary action with mandatory disclosures

                                                                18

1  and not mandatory disclosures and expectation that there's
2  going to be document production and depositions and, perhaps, a
3  full-blown trial on the one hand and on the other hand the
4  Court's summary powers to get in, to roll up its sleeves, which
5  this Court -- Your Honor and Judge Cote and other Judges of
6  this Court -- are certainly famous for doing and saying, come
7  in here and let's resolve this, we don't need lawyers -- I'm
8  not casting any aspersions on Mr. Goodman, he's a brother
9  lawyer, he's a very fine lawyer -- but we don't need lawyers
10 bringing second and third and fourth actions that can be
11 resolved on a telephone call, on a letter, on an application to
12 enforce a settlement that was already hammered out and come
13 down here and let's talk about it.  What else does the
14 defendant have to do to satisfy the plaintiff and if there's a
15 financial component to discuss it in that context.  Certainly,
16 even from the standpoint of counsel fees -- Mr. Goodman always
17 mentions because he's a good plaintiff's lawyer in every
18 conversation that, you know, there's statutory fees.  That's
19 true and there may be fees attendant to violating -- if there
20 was a violation, I don't concede that -- but if there were to
21 be found to be a violation of the settlement agreement or the
22 consent order but there's certainly far less fees that my
23 client is exposed to paying if on a letter to the Court to
24 arrange a conference to come down and straighten out what may
25 be a simple problem then to pay for the prosecution of an

```
                                                             19
 1   unnecessary second or third follow -- and there is no third, I
 2   shouldn't say that -- a second follow-up action.
 3              So I think there are enormous practical consequences
 4   and there are undoubtedly legal consequences when we get into
 5   it but I adopt almost verbatim much of what Your Honor has said
 6   and we do want to have an opportunity to present this to Judge
 7   Cote both, you know, as a defense -- in the defense of
 8   settlement and prior settlement and also the question of
 9   whether it should be stayed or on what grounds the case should
10   go forward which, I think, is a matter of her discretion.
11              MR. GOODMAN:  Your Honor, if I could.
12              Counsel mentions telephone calls and letters
13   resolving things quickly and easily.  We've had those telephone
14   calls, we've had those letters.  We're here today.  Plaintiff
15   is very open to discussing it.  We haven't resolved it in all
16   these months and all these calls and all these letters.  The
17   other things is the concept that this original settlement had
18   what Your Honor referred to -- and I don't know where Your
19   Honor got it but you said the extra money.  There was no extra
20   money.  The plaintiffs took an amount that I felt was lower
21   than they could reasonably expect to gain through that case --
22              THE COURT:  Oh, I understand that but --
23              MR. GOODMAN:  They made a very reasonable settlement
24   so --
25              THE COURT:  But, you know, I have a feeling that Mr.
```

20

1  Esposito has a different view of things, that his financial
2  resources were low and maybe you knew that and that he was
3  trying to get this into a framework where you would try to
4  resolve things among the lawyers but if it didn't work it would
5  go to Judge Cote in some sort of informal fashion and that's
6  why he paid a large percentage of his assets to sort of get
7  into that track.
8          MR. GOODMAN:  Well, Judge --
9          THE COURT:  Now, I don't know.  Judge Cote may find
10 that's total hogwash and that she does not want future cases to
11 come back to her.  She may even state that if there is a third
12 case she's not going to take it as a related case but she may
13 go the other way and I just don't see a big problem if there's
14 a relatively speedy briefing schedule and I think that's where
15 we are and Mr. Goodman can make it clear to Judge Cote that he
16 thinks this is all just a bunch of semantics and that he would
17 prefer to have her allow future lawsuits but even if she
18 somehow cabins [sic] him into the old lawsuit he still wants
19 sort of old fashioned discovery.  You know, I don't think he's
20 claiming that he wants to take the ten depositions --
21         MR. GOODMAN:  No.
22         THE COURT:  -- because it's a new case but --
23         MR. GOODMAN:  That's not what we're claiming at all.
24         THE COURT:  -- and, you know, just leave it up to
25 Judge Cote but --

                                                                    21

1         MR. GOODMAN:  Your Honor, there are two important
2  things, I think.  First of all, this whole idea that the poor
3  Esposito's and their company have no assets and that as you
4  just phrased it that the last settlement was a significant
5  portion of his assets, Mr. Rudofsky just earlier this morning
6  in front of this Court said that it had cost his clients
7  $100,000.00 in lost sales and enforcement procedures just from
8  these titles alone.  These titles alone are a minuscule
9  percentage of the business of Gentleman's Video.  They have a
10 huge operation and if they lost $100,000.00 on lost sales of
11 these titles then there were misrepresentations in the prior
12 settlement agreement but it also gives you a heck of a good
13 idea of the kind of money that is available and, quite frankly,
14 my clients and I are getting rather tired of hearing this sob
15 story about how poor they are and how they have no assets and
16 they can only come up with $500.00 a month and so forth.  So I
17 think that needs to be said.  The second thing is that I
18 believe Judge Cote issued two separate orders of reference; one
19 of which was for proceedings on the first action and contempt,
20 etc., and so forth.  I believe -- and I don't have them in
21 front of me and they should be read -- but I think that the
22 motion that is being contemplated -- I would also point out
23 that the first motion to dismiss the complaint had nothing to
24 do with this concept of this should be a contempt heading
25 instead of a new plenary action, it was a different kind of

                                                                22

1  motion altogether.
2          THE COURT:  Yes.
3          MR. GOODMAN:  I think that motion by Judge Cote's own
4  order of reference is coming to you, not to Judge Cote.  I'm
5  not sure about that but that certainly warrants review.
6          THE COURT:  Well, you know, frankly, I don't have
7  what I usually have.  I have four [sic] orders of reference
8  here and they're dated June 13th and June 15th and Judge Cote's
9  first order reference has the old docket number and says that
10 this is to handle a specific non-dispositive -- or any specific
11 non-dispositive motion/dispute and under that it says "post-
12 judgment proceedings."  So, you know, if she decides that the
13 new allegations will proceed only under the old case I'm
14 empowered to decide anything that's non-dispositive such as
15 discovery to find out how much money he does have and discovery
16 to find out what steps he's taken to comply with the first case
17 and, of course, she also checks settlement.  Then two days
18 later she issued an order of reference in the new case and
19 there she checks only general pre-trial which by its terms
20 includes scheduling, discovery, non-dispositive pre-trial
21 motions and settlement.  So I think that this motion that Mr.
22 Rudofsky is considering is a dispositive motion.  He wants a
23 ruling that the second case cannot go forward on its own, that
24 it has to be treated as a part of the first case and in that
25 connection I will have the power to make non-dispositive

1   rulings but she has not asked for anything from me such as a
2   report and recommendation to the extent that somebody makes a
3   dispositive motion and I think the briefing has to go to her
4   and she will decide Mr. Rudofsky's motion and she may feel that
5   this is a complete waste of her time and it doesn't much matter
6   whether the dispute continues under one docket number or on the
7   other but on the other hand, she may think that this is
8   important and that there will inevitably be future complaints
9   and she may want to in the sense give guidance about what
10  happens if there's a third problem.
11          So I think it's just a matter of a briefing schedule
12  and I don't think it's coming to me and I think we should just
13  do a briefing schedule and quit through today and at any time
14  the parties want me to hold a full-fledged settlement
15  conference I have a standing order for settlement conferences.
16  Ms. Lewis can give you a copy now if you want it but basically
17  I only do it once so the parties have to pick out the best time
18  that they think I should hold a settlement conference.  If I do
19  I want decision-makers actually present and I also want a
20  confidential ex-parte fax the week before the conference giving
21  me the latest news on the settlement proposals and
22  confidentially telling me what the parties' bottom line is and
23  I'm not going to go tell that to the other side but it sort of
24  helps me to get ready for the settlement conference.  So I'm
25  willing to hold a settlement conference but I'm only going to

```
                                                                  24
 1   do it once and at the moment Mr. Esposito really can't be here
 2   but I'm willing to hold a conference at a time when he can be
 3   here.  I usually need about three or four weeks advance notice
 4   to -- you know, we have courtroom sharing here and we have to
 5   try and find a date when we can get everyone together but I
 6   just don't think that now is a propitious time.  I think the
 7   parties have very different views on the money that should be
 8   ascribed to these recent developments and maybe the parties
 9   will have a different view of things after Judge Cote rules on
10   Mr. Rudofsky's motion but I think there's nothing to do here
11   except a briefing schedule.
12           So, Mr. Rudofsky, how long is it going to take you to
13   make this motion?
14           MR. RUDOFSKY:  Well, Your Honor, thinking about my
15   calendar as you were speaking, I have the Jewish holidays this
16   week which really knocks out as a practical matter Wednesday,
17   Thursday and Friday and I have an arbitration hearing that
18   begins on Monday to Thursday of next week, skips over Friday
19   and then finishes Monday and Tuesday the following week.  That
20   takes me through the 25th.  I have a trial that begins on
21   October 10th so if I could have a reasonable due date between
22   September 25th and October 10th I could certainly get an
23   appropriate motion together and serve it by then.  My optimum
24   date would be Monday, October 8th.  If I'm recalling correctly
25   I think that that week Monday is October 8th.
```

                                                                    25

1           THE COURT:  Yes, it happens to be Columbus Day.  This
2    Court will be closed.
3           MR. RUDOFSKY:  Well, what I really need to do at that
4    point under Judge Cote's rules is serve the papers on Mr.
5    Goodman because she doesn't want to see the papers until the
6    time when the reply papers are due.
7           THE COURT:  She wants them all at once.
8           MR. RUDOFSKY:  She wants them all at once.
9           THE COURT:  Yes.
10          MR. RUDOFSKY:  So if I could serve the papers on
11   October 8th or October 9th if that's possible?
12          THE COURT:  Yes, no, I think everyone should serve by
13   e-mail or by fax.
14          MR. RUDOFSKY:  Sure.  So if that's agreeable I would
15   undertake to serve my papers by then and Mr. Goodman can have
16   as much time as he feels he needs to respond.
17          MR. GOODMAN:  That's fine with me that date.
18          THE COURT:  Okay.  How much time would you want then?
19          MR. GOODMAN:  I would say three weeks after that.
20          THE COURT:  Okay.
21          MR. GOODMAN:  Let's see, that's a Tuesday, the 9th?
22          THE COURT:  Well, it depends whether you call the 8th
23   a holiday.  A lot of people are working on the 8th but the
24   courts are closed but whichever it is --
25          MR. GOODMAN:  Okay.  The 8th.

26

1    THE COURT: -- it will be in your office October 8th
2    and you can get to it when you get to it. If you want three
3    weeks I guess that goes to until Monday, October 29th.
4    MR. GOODMAN: Yes. Let's make it the 31st. Make it
5    the last day of October.
6    THE COURT: That's a Wednesday. All right.
7    MR. RUDOFSKY: I'm agreeable to that, Judge, but I
8    was going to advise Your Honor I am traveling that week so Mr.
9    Goodman could certainly even have until the end of the week.
10   As a practical matter I will not see the papers until the
11   following week and then if I could have two weeks to respond,
12   whatever the date is, it would be fine. I should say to reply.
13   THE COURT: Yes, well, he may want to do it a little
14   bit earlier before you go on your travels --
15   MR. GOODMAN: Yes, I would prefer to move it up then
16   and get this going. Yes.
17   THE COURT: All right. You want to give him
18   something like Tuesday, October 23rd?
19   MR. GOODMAN: Well, let's see. If we could get the
20   end of that week.
21   THE COURT: Well, that's just before he goes to
22   travel.
23   MR. RUDOFSKY: Yes. I'm away Sunday to Sunday so if I
24   --
25   THE COURT: Yes, you're going to be gone October

```
                                                              27
```

1  28th, a Sunday, to November 4th, a Sunday. So --

2           MR. GOODMAN:  I'm going to be away the week before

3  that so I'm not going to be able to move it up that much.

4           MR. RUDOFSKY:  Right.  So it makes more sense to do

5  it the way we had originally --

6           MR. GOODMAN:  So I guess the way -- but I would ask

7  that the amount of the reply time be shortened down.

8           THE COURT:  Well, I think that was a little bit more

9  reply time than I was expecting.  I would think that he gets

10 back into his office, November 5th, Monday, and I don't see why

11 he can't crank that out by November 9th, Friday.  So --

12          MR. RUDOFSKY:  Could we compromise on the 12th,

13 Judge, so I can have the weekend if I need it?  I don't think

14 it's going to make any practical difference in Judge Cote's

15 chambers.

16          THE COURT:  I guess that's okay because I don't think

17 this year we are getting Veteran's Day.  I'm not sure about

18 that.  Veteran's Day falls on November 11th, Sunday, so as far

19 as I've heard November 12th is okay.

20          MR. RUDOFSKY:  All right.  Thank you, Judge.

21          THE COURT:  Well, why don't we compromise and say

22 November 12th by noon.

23          MR. RUDOFSKY:  Fine.

24          THE COURT:  Okay.  So the briefing schedule is

25 October 8th, October 31st or did you want -- Mr. Goodman, did

28

1 you want to go until November 2nd by fax?
2          MR. GOODMAN: Why not, Judge, I can use weekends too.
3          THE COURT: Okay. Good. November 2nd and these will
4 be served by e-mail and then reply, November 12th by noon and
5 it all goes to Judge Cote. I guess she wants it delivered to
6 her chambers in one package on November 12th and then she'll
7 decide and at any time if the parties think that now is the
8 time to have a settlement conference call Ms. Lewis and she'll
9 give you some dates of availability and, otherwise, we'll just
10 wait to hear what Judge Cotes says and then we'll -- you know,
11 I think the attorneys should try to prepare a scheduling order
12 as soon as Judge Cote rules and then I could just so order it
13 if there's no dispute about it.
14          All right. Everyone is excused.
15                         * * * * *
16
17
18
19
20
21
22
23
24
25

29

* * * * *

I certify that the foregoing is a transcript from an electronic sound recording of the proceedings in the above-entitled matter.

_____
CARLA NUTTER

Dated: September 16, 2007