UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
EVART ENTERPRISES, INC.,

                Plaintiff,

07 Civ. 5441

**DECLARATION
OF H. NICHOLAS
GOODMAN, ESQ.**

                -against-

GENTLEMEN'S VIDEO, INC., MICHAEL
ESPOSITO, individually and in his corporate
capacity, and SCOTT ESPOSITO, individually and
in his corporate capacity,

                Defendants.
------------------------------------------------------------------x

**H. NICHOLAS GOODMAN, ESQ.**, an attorney duly admitted to practice before this Court, affirms the following to be true under penalty of perjury:

1.      I am a partner of the firm of Quirk and Bakalor, P.C., attorneys for Plaintiff, EVART ENTERPRISES, INC., ("Evart") in the above captioned action. As such I am fully familiar with the facts and procedural history of this matter. I was also counsel to Evart in a prior action (the "Prior Action") it brought against Defendants GENTLEMEN'S VIDEO, INC., MICHAEL ESPOSITO, individually and in his corporate capacity, and SCOTT ESPOSITO, individually and in his corporate capacity (sometimes hereinafter collectively referred to as "Gents"). I am fully familiar with the Settlement Agreement and the Consent Order and Permanent Injunction entered in the Prior Action.

2.      I submit this Declaration in opposition to Gents' motion for an Order dismissing or staying this action "…in the exercise of this Court's retained jurisdiction…" Gents' drastic request has no basis in fact or law and is in fact nothing more than a thinly disguised attempt to rewrite the Settlement Agreement, in complete contravention of basic contract law and the parol

evidence rule. Meanwhile, contrary to Gents claimed desire for summary resolution, this motion has actually delayed resolution while at the same time increasing the legal fees Gents purports to avoid.

**The Parties**

3.  Evart is a New York corporation wholly owned by Arthur Morowitz. Morowitz is also the sole owner of Evart's sister company, Distribpix, Inc. ("Distribpix"). Evart owns copyrights, or exclusive rights, in a significant number of motion pictures from a number of "mainstream" genres, as well as certain adult motion pictures produced in the 1970s and 1980s. Most of Evart's library began as 16 or 35 millimeter film that was transferred to VHS tape in the 1980s and then, after 2000, was transferred into DVD formats and formats for video on demand (VOD) services.

4.  Gentlemen's Video, Inc., is a purveyor of adult motion pictures and compilations, with a large catalog that includes numerous adult categories, both classic and contemporary. At issue in the Prior Action and again herein are motion picture compilations from Gents' "Golden Age of Porn" line that contains in excess of fifty titles.

**THE PRIOR ACTION**

5.  After extended negotiations between the parties failed, Evart commenced the Prior Action in November 2006, alleging that Gents had willfully infringed Evart's copyright in the motion picture "Deep Inside Annie Sprinkle," footage from which comprised most of two of Gents' "Golden Age of Porn" compilations. A copy of Evart's Complaint in the Prior Action is annexed hereto as Exhibit "A."

6.  Settlement negotiations quickly ensued, payment terms were agreed upon and the parties entered into a Settlement Agreement dated January 30, 2007. A copy of the Settlement

Agreement is annexed hereto as Exhibit "B." Your Honor "So Ordered" the Settlement Agreement on February 13, 2007. The Settlement Agreement included a Consent Order and Permanent Injunction (the "Permanent Injunction"), attached as an exhibit thereto. Your Honor executed the Permanent Injunction on February 13, 2007. A copy of the fully executed Permanent Injunction is annexed hereto as Exhibit "C."

7.  The Settlement Agreement called for two initial payments totaling $27,000.00, followed by 24 monthly payments of $2,000.00 each (the "settlement amount"). By his Affidavit submitted in support of the within motion (the "Esposito Affidavit"), Defendant Michael Esposito ("Esposito") now argues that the settlement amount was "way beyond" what Evart could have recovered. Esposito Affidavit, Paragraph "8." [1]

8.  To the extent this Court is even willing to entertain discussion about the settlement value of the Prior Action, and to the extent this Court is willing to consider Esposito's inadmissible parol evidence, and this Court should not be so willing, then this Court should also consider that Gents was facing the near certainty of a finding of two willful copyright infringements, and an award to Evart of statutory damages and attorney's fees.

9.  The settlement amount also provided consideration for Evart to relinquish its right to prosecute any suit, action or proceeding against the other entities named in the Prior Action, or against any other person or entity with whom Gents dealt with respect to the compilations at issue in the Prior Action. Exhibit "B," Paragraph "6." Thus, Evart gave up a significant potential for recovery against numerous parties, while Gents received the substantial benefit of being relieved of the prospect of indemnification claims from its customers.

---

[1] Esposito's claims about revenue Gents lost by withdrawing the entire "Golden Age of Porn" line are a tacit admission that that entire line might be tainted with infringing footage. Those loss claims are also inconsistent with the representations and warranties made in the Settlement Agreement. *See,* Exhibit "B," Paragraph "8." In any event, Evart has alleged that its footage appears in only four of Gents' "Golden Age of Porn" compilations.

10. This Court should not countenance Esposito's self-serving, after the fact declarations about the settlement amount. But, were this Court to assess the settlement amount in light of the benefits Gents received and the potential recovery Evart gave up, this Court would certainly find that the settlement amount was most favorable to Gents.

**The Subsequent Infringements And Second Action**

11. In late March 2007, it came to Evart's attention that two other compilations within Gents' "Golden Age of Porn" line contained Evart footage. Details concerning Gents infringing compilations are set forth in Evart's Amended Complaint, a copy of which is annexed hereto as Exhibit "D."

12. Evart brought these new infringements to Gents' attention by letter dated March 29, 2007, in which Evart's counsel wrote, "Evart intends to bring this matter to Judge Cote's attention forthwith *and reserves its rights to seek all appropriate remedies, including remedies for contempt.*" (Emphasis supplied). Rudofsky Declaration, Exhibit "C." Evart subsequently determined not to pursue contempt remedies but, in keeping with its reservation of rights, Evart did commence this action seeking other appropriate remedies.

13. Evart did not commence its second action lightly. Before serving and filing its Complaint, Evart considered the following:

- Evart's efforts to engage Gents in productive settlement negotiations failed as Gents refused to offer any payment at all;
- the Prior Action had itself been preceded by many months of fruitless talks and negotiations;
- after Gents' representations as to its efforts to withdraw its infringing products and to police the marketplace (*see,* Rudofsky Declaration, Exhibit "E"), Evart continued to

4

find the infringing compilations readily available and continued to document purchases of them;

- Gents' "Golden Age of Porn: Samantha Fox," was released for the first time four days *after* Gents executed the Settlement Agreement and the Permanent Injunction, underscoring Gents' bad faith;

- certain footage in "Golden Age of Porn: Samantha Fox" bore the watermark "ABA." ABA stands for Alpha Blue Archives, another purveyor of classic adult footage who used the footage without Evart's permission. *See,* Exhibit "D," Paragraph "61." This further underscored Gents' bad faith.[2]

14.  Ultimately, with all attempts at an amicable resolution failing, Evart commenced the second action in June 2007.

**Gents' First Motion To Dismiss**

15.  Gents' first response to Evart's Complaint consisted of letters to Your Honor and Magistrate Eaton asking for a conference on the ground the second action was "unnecessary." Gents followed this with an ill-conceived motion to dismiss. That motion did not even mention the "retained jurisdiction" arguments made herein, but rather argued that Evart's complaint was defective because it did not allege that Evart had acquired its rights through written instruments as required by 17 U.S.C. §204(a).

16.  Gents' motion would almost certainly have failed. *See,* Evart's Memorandum of Law, submitted herewith. But in an effort to avoid the burdens and delays of motion practice, Evart determined simply to serve an Amended Complaint setting forth the transactions at issue in

---

[2] The watermarked footage also calls into serious question Esposito's claim on this motion that he obtained the infringing footage from a "reputable source." Esposito Declaration, Paragraph "7."

5

precise detail. *See,* Exhibit "D." Evart served the Amended Complaint on August 23, 2007, rendering Gents' motion moot.

17. Despite the Amended Complaint's clear recitation of the transactions at issue, Gents now purports to question Evart's standing to have complained about infringements and to have sued upon them. Gents mistakenly believes that Evart did not acquire its rights until August 2007. However, Evart's standing rests on the rights Evart acquired by oral transfers from its sister company Distribpix in 1981 and 1982. Exhibit "D," Paragraphs "24," "25," "35," and "36." Evart's standing obviously did not arise out of the August 2007, Memoranda of Transfer that merely memorialized the earlier transfers.

18. Gents' counsel points to an email from Evart's counsel dated August 3, 2007, that referred to "the existence of the written contracts by which the two copyrights at issue were acquired from Atlas Films, Inc. and Mature Pictures, Inc." Rudofsky Declaration, Exhibit "G." Those contracts were executed in 1981 and 1982 respectively and they certainly did exist on August 3, 2007. Exhibit "D," Paragraphs "22" and "34." Gents' counsel apparently confuses those contracts with the aforementioned Memoranda of Transfer. His conclusions "beyond peradventure" that Evart had "no standing" to alert Gents to the infringements in March 2007, or to sue on them in June 2007, and that it was somehow improper for the undersigned to refer to the underlying contracts on August 3, 2007, (Rudofsky Declaration, Paragraph "9") are obviously groundless.

**The September 11, 2007, Court Conference**

19. A conference was held before Magistrate Douglas Eaton on September 11, 2007. Prior thereto, throughout the summer of 2007, Evart continued to document purchases of Gents' infringing compilations. In August 2007, Evart discovered Gents' entire "Golden Age of Porn"

line, *including* the two Gents' compilations at issue in the Prior Action, available for download on a popular website. Nonetheless, Evart remained open to settlement negotiations and actively sought to engage Gents' counsel prior to the September 11 conference. *See,* Rudofsky Declaration, Exhibit "H," Part 1, pp. 3-5.

20. The conference presented another opportunity for Gents to come forward with a serious offer of settlement, but Gents did not do so. *See,* Rudofsky Declaration, Exhibit "H," Part I, p. 4. This court should also be advised that in the weeks following that conference, extensive further negotiations took place between the parties themselves, primarily through third-party, non-attorney intermediaries. Those efforts also failed.

21. The Rudofsky Declaration offers selective quotes from the conference transcript, quoting at length from Magistrate Eaton as though he somehow endorsed Gents' position. But read closely and in context, it is clear that Magistrate Eaton was merely speculating, without the benefit of motion papers, exhibits and argument, as to what Your Honor might do. Indeed, most of his ruminations are prefaced with disclaimers such as "…I don't know what Judge Cote is going to say …but suppose Judge Cote says…." Rudofsky Declaration, Exhibit "H," Part 2, p. 17. In the same fashion, Magistrate Eaton also stated with respect to Gents' position "[n]ow I don't know. Judge Cote may find that's total hogwash…" Rudofsky Declaration, Exhibit "H," Part 2, p. 20. As this Court can see, Magistrate Eaton's speculation as to various possible outcomes was just that, speculation, and has no weight or authority herein.

22. Of course even by speculating that Your Honor could theoretically find that Evart's remedies are limited to contempt, Magistrate Eaton necessarily ignored the only possible sources for such a limitation, the Settlement Agreement and the Permanent Injunction. As stated, those documents do not remotely support any such limitation. And his notion that Your

Honor could somehow find that Gents paid "extra money" to bring about a "regime" for summary enforcement, however speculative it may have been, certainly gave that theory more credit than it is due. Gents conveniently fails to quote Evart's response to the "extra money" comment, which appears at Rudofsky Declaration, Exhibit "H," Part 2, p. 21. Ultimately, Magistrate Eaton's comments are irrelevant to either party's position and Gents' lengthy quotations of those comments further highlights the utter lack of authority for Gents' position.

**The Current Motion**

23.     Gents argues that this Court should preclude Evart from pursuing any remedy for the infringements alleged in the Amended Complaint, other than the remedy of contempt. Gents suggests that its payments under the Settlement Agreement were not just meant to resolve the infringements alleged in the Prior Action but were additionally meant to permanently "buy peace" for Gents (Esposito Affidavit, Paragraph "8;" see also, Rudofsky Declaration, Exhibit "H," Part 1, p.7). In a remarkable feat of revisionist history, Esposito now contends that the Settlement Agreement and Permanent Injunction was meant to establish a "regime" by which Gents cannot be exposed to statutory damages and attorney fees for infringements of Evart's rights.

24.     First, as stated, Gents' $75,000.00 total payment was patently not adequate consideration for *both* Evart's discontinuance of the Prior Action and the sort of permanent pass for future infringements that Gents' now says it bargained for. This is especially when one considers Gents' track record with Evart and the size of Gents' catalog.

25.     Second, and more importantly, the Settlement Agreement and Permanent Injunction do not reflect anything like what Esposito now claims he "thought" and "believed." This Court will search those documents in vain for any language even hinting at a limitation on

8

Evart's rights and remedies concerning subsequent infringements by Gents. This is not a case in which this Court is confronted with arguably ambiguous contractual language limiting, or purporting to limit, a party's remedies. Here, the Settlement Agreement and Permanent Injunction do not contain any such language at all.

26. The Settlement Agreement also contains two "merger" or "integration" clauses. The first provides that the Settlement Agreement "constitutes the entire agreement and understanding with respect to its subject matter." Exhibit "B," Paragraph "12." By the second, the parties agreed the Settlement Agreement "supersedes all prior discussions, representations and negotiations relating to the subject matter herein." Exhibit "B," Paragraph "15." [3]

27. Even were this Court to credit Esposito's contentions that he did not "intend" future violations of the Settlement Agreement or Permanent Injunction to expose him to infringement actions and fee awards (Esposito Declaration, Paragraph "9"), those intentions are not reflected anywhere in the language that his attorney negotiated and that he and his attorney executed. In fact, those purported intentions and expectations are directly contradicted by Paragraph "13" that provides that in any action to enforce the Agreement the prevailing party "shall be entitled to recover…its costs, including reasonable attorneys' fees."

28. By the Permanent Injunction, Exhibit "C," Paragraph "1(c)," this Court permanently enjoined and restrained Gents from "[i]nfringing EVART's exclusive rights under copyright in any motion picture duly copyrighted by [EVART] or for which EVART owns exclusive distribution rights…" Through this Permanent Injunction, issued on the signed consent of counsel, Evart obtained the potential *additional* remedy of contempt for future

---

[3] Of course, Gents does not actually claim that the parties engaged in any discussions, representations and negotiations concerning a "framework" for "summary review," or concerning limitations of Evart's remedies in future infringement actions, perhaps because there absolutely were no such discussions or negotiations. Rather, Esposito offers only his unilateral "understanding" that Gents was somehow "buying peace" so as to eliminate future infringement actions. Esposito Affidavit, Paragraph "8."

9

infringements by Gents. The burden of proof required and remedies available for contempt differ from the burden of proof required and the remedies available for actions brought under the Copyright Act. In any event, the new and additional contempt remedy created by the Permanent Injunction herein is not by its own terms, or by the terms of the Settlement Agreement, exclusive. Nowhere did Evart give up its rights and remedies under the Copyright Act, or its other statutory or equitable remedies.

29. Paragraph "4" of the Permanent Injunction provides that this Court "shall retain jurisdiction of the within action to entertain such further proceedings and to enter such further orders as maybe necessary or appropriate to implement and/or enforce the provisions of" the Permanent Injunction. As this Court is no doubt aware, parties often utilize such provisions to secure federal jurisdiction over future actions to enforce a settlement agreement which actions might not otherwise meet the requirements of federal subject matter jurisdiction. *See*, Evart's Memorandum of Law, submitted herewith.

30. Gents' illogical and unprecedented argument that this Court's retention of jurisdiction somehow carries with it a limitation of Evart's remedies flies in the face of logic, not mention accepted practice. Even had Evart invoked this Court's contempt powers, which it did not, Evart could still pursue its other remedies for infringement. *See*, Evart's Memorandum of Law.

31. In the end, Gents' baseless motion served only to delay this case and to increase attorney fees. Evart is clearly entitled to pursue remedies by way of the Amended Complaint and is not limited to pursuing contempt remedies. Summary resolution of Evart's claims is available through the mechanism of a summary judgment motion, especially given that the infringements at issue are virtually conceded. Evart is prepared to move forthwith.

**WHEREFORE**, for all the reasons set forth herein, and upon the exhibits annexed hereto and the Memorandum of Law submitted herewith, Plaintiff EVART ENTERPRISES, INC., respectfully requests that this Court issue an Order denying Defendants' motion in its entirety, and granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
November 13, 2007

S/ H. Nicholas Goodman
H. NICHOLAS GOODMAN (HG7446)

TO:   Edward S. Rudofsky (ER 9037)
     ZANE and RUDOFSKY
     Attorneys for Defendants
     The Starrett Lehigh Building
     601 West 26th Street, #1111
     New York, New York 10001
     (212) 245-2222