**EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

EVART ENTERPRISES, INC.,

                    Plaintiff,

      -versus-

GENTLEMEN'S VIDEO, INC., MICHAEL
ESPOSITO, individually and in his corporate
capacity, SCOTT ESPOSITO, individually and
in his corporate capacity, RIGHT ASCENSION,
INC., DATA CONVERSIONS, INC., ABSTINENCE
NOW LIMITED INC., EAST MEDIA GROUP, INC.
and VIHARA VIDEO, INC.,

                  Defendants.
-------------------------------------------------------------x

**COMPLAINT**

Jury Trial
Demanded

Plaintiff, EVART ENTERPRISES, INC., by its attorneys Quirk and Bakalor, P.C., for its Complaint against GENTLEMEN'S VIDEO, INC., SCOTT ESPOSITO individually and in his corporate capacity, MICHAEL ESPOSITO individually and in his corporate capacity, RIGHT ASCENSION, INC., DATA CONVERSIONS, INC., ABSTINENCE NOW LIMITED INC., VIHARA VIDEO, INC. and EAST MEDIA GROUP, INC., states as follows:

1.    This action arises under the copyright laws of the United States (Title 17, United States Code). Jurisdiction is conferred upon this Court by 28 U.S.C. §1338(a). Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Plaintiff's claims arose in this District.

2.    Plaintiff, EVART ENTERPRISES, INC. (hereinafter "EVART,") is a corporation duly incorporated in and existing and operating under the laws of the State of New York. Plaintiff is the owner of exclusive rights in the United States of America in and to certain motion pictures.

3.    At all times relevant herein, GENTLEMEN'S VIDEO, INC. sometimes known as and/or doing business as "Gents" (hereinafter "GENTS") was and is a California corporation, existing under and by virtue of the laws of the State of California with a principal place of business located at 21638 Lassen St, Chatsworth, California 91311.

4.    At all times relevant herein, GENTS was and is in the business of creating, marketing, distributing, selling and/or licensing motion pictures fixed on digital versatile discs (also known as "digital video discs" and hereinafter referred to as "DVDs") and/or through services that make motion pictures available for download via the internet also sometimes referred to as a "content delivery services" or "internet based subscription video services" and also commonly known as "video on demand services" (hereinafter "VOD services.")

5.    At all times relevant herein, GENTS transacted business within the State of New York.

6.    At all times relevant herein, GENTS contracted to supply goods or services in the State of New York.

7.    At all times relevant herein, GENTS regularly did or solicited business, or engaged in a persistent course of conduct, or derived substantial revenue from goods used or consumed or services rendered, in the State of New York.

8.    At all times relevant herein, GENTS expected or should reasonably have expected its acts to have consequences in the State of New York.

9.    At all times relevant herein, GENTS derived substantial revenue from interstate or international commerce.

10.    Upon information and belief, at all times relevant herein, MICHAEL ESPOSITO was and is an owner, officer and/or director of GENTS, a defendant herein.

11.   At all times relevant herein, MICHAEL ESPOSITO expected or should reasonably have expected his acts on behalf of GENTS to have consequences in the State of New York.

12.   Upon information and belief, at all times relevant herein, defendant SCOTT ESPOSITO, was and is an owner, officer and/or a director of GENTS, a defendant herein.

13.   At all times relevant herein, SCOTT ESPOSITO expected or should reasonably have expected his acts on behalf of GENTS to have consequences in the State of New York.

14.   Upon information and belief, at all times relevant herein, SCOTT ESPOSITO derived substantial revenue from interstate or international commerce.

15.   Upon information and belief, at all times relevant herein, MICHAEL ESPOSITO derived substantial revenue from interstate or international commerce.

16.   At all times relevant herein, RIGHT ASCENSION, INC., sometimes known as and/or doing business as "DVD Empire" or "Adult DVD Empire" (hereinafter "DVD EMPIRE") was and is a Pennsylvania corporation, existing under and by virtue of the laws of the State of Pennsylvania, with a principal place of business at 704 Dunbury Court, Mars, Pennsylvania 16046.

17.   At all times relevant herein DVD EMPIRE was and is in the business of marketing, distributing, selling and/or licensing motion pictures fixed on DVDs and/or through VOD services.

18.   At all times relevant herein, DVD EMPIRE transacted business within the State of New York.

19.   At all times relevant herein, DVD EMPIRE contracted to supply goods or services in the State of New York.

20.     At all times relevant herein, DVD EMPIRE regularly did or solicited business, or engaged in a persistent course of conduct, or derived substantial revenue from goods used or consumed or services rendered, in the State of New York.

21.     At all times relevant herein, DVD EMPIRE expected or should reasonably have expected its acts to have consequences in the State of New York.

22.     At all times relevant herein, DVD EMPIRE derived substantial revenue from interstate or international commerce.

23.     At all times relevant herein, DATA CONVERSIONS, INC. formerly known as A.E.B.N. INC. and sometimes currently known as and/or doing business as "AEBN" (hereinafter "AEBN") was and is a North Carolina corporation, existing under and by virtue of the laws of the State of North Carolina with a principal place of business at 5300 Old Pineville Road, Suite 152, Charlotte, North Carolina.

24.     At all times relevant herein, AEBN was and is in the business of marketing, distributing, selling and/or licensing motion pictures fixed on DVDs and/or through VOD services.

25.     At all times relevant herein, AEBN transacted business within the State of New York.

26.     At all times relevant herein, AEBN contracted to supply goods or services in the State of New York.

27.     At all times relevant herein, AEBN regularly did or solicited business, or engaged in a persistent course of conduct, or derived substantial revenue from goods used or consumed or services rendered, in the State of New York.

28.     At all times relevant herein, AEBN expected or should reasonably have expected its acts to have consequences in the State of New York.

29.     At all times relevant herein, AEBN derived substantial revenue from interstate or international commerce.

30.     At all times relevant herein, ABSTINENCE NOW LIMITED, INC., sometimes known as and/or doing business as "AN Limited" or "Video Extreme" ("VIDEO EXTREME") was and is a Washington corporation, existing under and by virtue of the laws of the State of Washington with a principal place of business at 3708 Morning Mist, Bellingham, Washington, 98229 and/or a principal place of business at 1012 W. Holly Street, Bellingham, Washington, 98225.

31.     At all times relevant herein, VIDEO EXTREME was and is in the business of marketing, distributing, selling and/or licensing motion pictures fixed on DVDs and/or through VOD services.

32.     At all times relevant herein, VIDEO EXTREME transacted business within the State of New York.

33.     At all times relevant herein, VIDEO EXTREME contracted to supply goods or services in the State of New York.

34.     At all times relevant herein, VIDEO EXTREME regularly did or solicited business, or engaged in a persistent course of conduct, or derived substantial revenue from goods used or consumed or services rendered, in the State of New York.

35.     At all times relevant herein, VIDEO EXTREME expected or should reasonably have expected its acts to have consequences in the State of New York.

36.    At all times relevant herein, VIDEO EXTREME derived substantial revenue from interstate or international commerce.

37.    At all times herein mentioned, EAST MEDIA GROUP, INC. (hereinafter "EMG") was and is a New Jersey corporation, existing under and by virtue of the laws of the State of New Jersey with a principal place of business at 275 English Place, Basking Ridge, New Jersey.

38.    At all times relevant herein, EMG was and is in the business of marketing, distributing, selling and/or licensing motion pictures fixed on DVDs and/or through VOD services.

39.    At all times relevant herein, EMG sold and continues to sell motion pictures to customers who download the motion pictures for a fee at www.vodauthority.com.

40.    At all times relevant herein, EMG transacted business within the State of New York.

41.    At all times relevant herein, EMG contracted to supply goods or services in the State of New York.

42.    At all times relevant herein, EMG regularly did or solicited business, or engaged in a persistent course of conduct, or derived substantial revenue from goods used or consumed or services rendered, in the State of New York.

43.    At all times relevant herein, EMG expected or should reasonably have expected its acts to have consequences in the State of New York.

44.    At all times relevant herein, EMG derived substantial revenue from interstate or international commerce.

45.    At all times relevant herein, VIHARA VIDEO, INC. (hereinafter "VIHARA") was and is a New York corporation, existing under and by virtue of the laws of the State of New York with a principal place of business at 592 8th Avenue, New York, New York.

46.    At all times relevant herein, VIHARA was and is in the business of retail DVD sales within the State of New York.

47.    At all times relevant herein, VIHARA derived substantial revenue from interstate commerce.

## PLAINTIFF'S MOTION PICTURE

48.    In or about 1981, EVART completed production of a full length motion picture entitled "Deep Inside Annie Sprinkle" ("Plaintiff's Motion Picture.")

49.    Plaintiff's Motion Picture was shown in theatres throughout the United States of America beginning in January 1982. Plaintiff's Motion Picture enjoyed great commercial success.

50.    EVART thereafter duly registered the copyright for Plaintiff's Motion Picture with the United States Copyright Office. EVART received from the Register of Copyrights a Certificate of Registration, effective date November 12, 1982. A copy of that Certificate of Copyright is annexed hereto as Exhibit "A."

51.    In or about 2002, Plaintiff's licensee released a digitally re-mastered version of Plaintiff's Motion Picture on DVD ("Plaintiff's DVD.") Both the packaging of Plaintiff's DVD, and the motion picture contained on the DVD, bore appropriate copyright notices.

52.    Plaintiff's DVD enjoyed great commercial success and was and is currently is being offered for sale and sold by many vendors, including DVD EMPIRE, a defendant herein.

53.    Plaintiff's DVD was subsequently licensed to third-parties, including among others AEBN, EMG and DVD EMPIRE, defendants herein, who have made Plaintiff's DVD available through VOD services.

54.    Since November 12, 1982, Plaintiff and Plaintiff's Licensee have complied in all respects with all statutory formalities of the Copyright Act and have maintained the exclusive rights and privileges in and to the copyright of Plaintiff's Motion Picture to maintain the validity of the registered copyright in Plaintiff's Motion Picture.

55.    Since November 12, 1982, Plaintiff has been and still is the sole proprietor of all rights, title, and interest in and to the copyright in Plaintiff's Motion Picture.

## DEFENDANTS' INFRINGING MOTION PICTURES

56.    In or about 2004, following the release and commercial success of Plaintiff's DVD, GENTS produced or caused to be produced a motion picture entitled "The Golden Age of Porn: Annie Sprinkles Volume 1" (sometimes identified as "The Golden Age of Porn: Annie Sprinkles 1"), and a second motion picture entitled "The Golden Age of Porn: Annie Sprinkles Volume 2" (sometimes identified as "The Golden Age of Porn: Annie Sprinkles 2.") Both of these motion pictures are hereinafter referred to collectively as "Defendants' Infringing Motion Pictures."

57.    Defendants' Infringing Motion Pictures contained exact copies of both the images and sound track of Plaintiff's Motion Picture. Indeed, GENTS did nothing more than willfully remove the credits and copyright notice from Plaintiff's DVD, and then willfully copy remaining scenes, including the verbatim soundtrack, dividing those scenes into two "volumes."

58.    GENTS placed or caused to be placed credits on both of Defendants' Infringing Motion Pictures which credits state that GENTS owns and produced each of Defendants'

Infringing Motion Pictures, including the scenes copied directly from Plaintiff's Motion Picture/Plaintiff's DVD.

59.    Defendants' Infringing Motion Pictures contain copyright notices stating that the film was "MANUFACTURED AND DISTRIBUTED BY GENTLEMEN'S VIDEO 21638 LASSEN STREET CHATSWORTH., CA., 91311 ©2004 GENTLEMEN'S VIDEO All Rights Reserved."

60.    Upon information and belief, GENTS placed the aforementioned copyright notices on Defendants' Infringing Motion Pictures knowing that same were false and GENTS distributed Defendant's Infringing Motion Pictures with those false copyright notices in apparent criminal violation of 17 U.S.C. § 506(c).

61.    Upon information and belief, MICHAEL ESPOSITO personally produced and/or participated in the production of and/or authorized the production of Defendants' Infringing Motion Pictures, including the knowing copying of Plaintiff's Motion Picture/Plaintiff's DVD and the placement of the false copyright notices.

62.    Upon information and belief, SCOTT ESPOSITO personally produced and/or participated in the production of and/or authorized the production of Defendants' Infringing Motion Pictures, including the knowing copying of Plaintiff's Motion Picture/Plaintiff's DVD and the placement of the false copyright notices.

63.    In or about 2004, GENTS also created packaging for Defendants' Infringing Motion Pictures bearing exact copies of images from Plaintiff's Motion Picture/Plaintiff's DVD.

64.    Upon information and belief, MICHAEL ESPOSITO personally created and/or participated in the creation of and/or authorized the creation of packaging for Defendants'

Infringing Motion Pictures bearing images copied exactly from Plaintiff's Motion Picture/Plaintiff's DVD.

65.    Upon information and belief, SCOTT ESPOSITO personally created and/or participated in the creation of and/or authorized the creation of packaging for Defendants' Infringing Motion Pictures bearing images copied directly from Plaintiff's Motion Picture/Plaintiff's DVD.

66.    GENTS has from time to time since 2004, and continuing to date, copied Defendants' Infringing Motion Pictures and has offered those copies for sale, sold them, distributed them and/or licensed them in the aforementioned packaging as videocassettes, laser discs, VCD's, DVD's and/or through VOD services.

67.    Defendants DVD EMPIRE, AEBN, VIDEO EXTREME, EMG and VIHARA have from time to time since 2004, and continuing to date, copied Defendants' Infringing Motion Pictures and/or offered copies of Defendants' Infringing Motion Pictures for sale, sold them, distributed them and/or licensed them in the aforementioned packaging as videocassettes, laser discs, VCD's, DVD's and/or through VOD services.

68.    EVART did not authorize any Defendant herein to copy Plaintiff's Motion Picture or Plaintiff's DVD, or to offer for sale or to sell, distribute and/or license copies of Plaintiff's Motion Picture/Plaintiff's DVD, or to utilize images from Plaintiff's Motion Picture/Plaintiff's DVD in conjunction with the offering for sale, distributing, selling and/or licensing of any motion picture including Defendants' Infringing Motion Pictures.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST GENTS, SCOTT ESPOSITO and MICHAEL ESPOSITO

69.    EVART repeats, reiterates and realleges each and every paragraph contained in the Paragraphs "1" through "68" inclusive, with the same force and effect as though fully set forth at length herein.

70.    By all of their acts with respect to Defendants' Infringing Motion Pictures, including the unauthorized copying of Plaintiff's Motion Picture/Plaintiff's DVD as set forth in detail above, GENTS, MICHAEL ESPOSITO and SCOTT ESPOSITO have violated and continue to violate the Copyright Act, 17 U.S.C. 101, *et seq.*

71.    Beginning on or about February 20, 2006, Plaintiff's licensee notified GENTS that GENTS' acts as set forth above constituted copyright infringement and demanded that GENTS cease and desist from any further infringing acts.

72.    Plaintiff's licensee thereafter received email assurances from GENTS that GENTS had taken appropriate steps to cease and desist infringing activities of its own and that GENTS had advised entities to whom GENTS had supplied copies of Defendants' Infringing Motion Pictures to stop their sales of same.

73.    The infringing activities of GENTS and those to whom GENTS supplied infringing goods did not cease or desist and those infringing activities continue to date.

74.    In September 2006, in a conversation with an officer of Plaintiff's licensee, SCOTT ESPOSITO directly acknowledged GENTS' continuing infringing activities, apologized for those activities and again promised that GENTS would cease those activities and would cause those to whom GENTS supplied goods infringing Plaintiff's copyright to cease their activities.

75.    To date, GENTS, and those to whom GENTS supplied goods infringing Plaintiff's copyright, continue to infringe Plaintiff's copyright.

76.    The infringing acts of GENTS, MICHAEL ESPOSITO and SCOTT ESPOSITO were, and continue to be, knowing and willful.

77.    By reason of the infringing activities of GENTS, MICHAEL ESPOSITO and SCOTT ESPOSITO, Plaintiff has sustained and will continue to sustain substantial injury and loss, and damage to its ownership rights of its copyright.

78.    Unless temporarily, preliminarily and permanently enjoined by order of this Court, GENTS, MICHAEL ESPOSITO and SCOTT ESPOSITO will continue to infringe said copyrights, all to plaintiff's irreparable injury.  Plaintiff is without an adequate remedy at law.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST GENTS, SCOTT ESPOSITO AND MICHAEL ESPOSITO

79.    EVART repeats, reiterates and realleges each and every paragraph contained in the paragraphs "1" through "78" inclusive, with the same force and effect as though more fully set forth at length herein.

80.    The unauthorized copying of images from Plaintiff's Motion Picture/Plaintiff's DVD onto the packaging of Defendants' Infringing Motion Pictures by GENTS, MICHAEL ESPOSITO and SCOTT ESPOSITO, set forth in detail above, constitute violations of the Copyright Act 17 U.S.C. 101, *et seq.*

81.    The continuing unauthorized copying of images from Plaintiff's Motion Picture/Plaintiff's DVD for use on the packaging of Defendants' Infringing Motion Pictures, and the offering for sale, sale, distribution and/or licensing of Defendants' Infringing Motion Pictures in that packaging by GENTS, MICHAEL ESPOSITO and SCOTT ESPOSITO constitute violations of the Copyright Act, 17 U.S.C. 101, *et seq.*

82.    The aforementioned unauthorized copying of images from Plaintiff's Motion Picture/Plaintiff's DVD on packaging by GENTS, MICHAEL ESPOSITO and SCOTT ESPOSITO as set forth above was and continues to be knowing and willful.

83.    By reason of the infringing activities of GENTS, MICHAEL ESPOSITO and SCOTT ESPOSITO, Plaintiff has sustained and will continue to sustain substantial injury and loss, and damage to its ownership rights of its copyright.

84.    Unless temporarily, preliminarily and permanently enjoined by order of this Court, GENTS, MICHAEL ESPOSITO and SCOTT ESPOSITO will continue to infringe said copyrights, all to plaintiff's irreparable injury. Plaintiff is without an adequate remedy at law.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST
## DVD EMPIRE

85.    EVART repeats, reiterates and realleges each and every paragraph contained in the paragraphs "1" through "84" inclusive, with the same force and effect as though more fully set forth at length herein.

86.    Upon information and belief, beginning in or about 2004 and continuing to date, DVD EMPIRE has offered for sale, sold, distributed and/or licensed copies of Defendants' Infringing Motion Pictures, both of which include unauthorized copies of Plaintiff's Motion Picture/Plaintiff's DVD.

87.    DVD EMPIRE has offered for sale, sold, distributed and/or licensed copies of Defendants' Infringing Motion Pictures in packaging bearing unauthorized copies of images from Plaintiff's Motion Picture/Plaintiff's DVD or in conjunction with such images.

88.    DVD EMPIRE's offering for sale, sale, distribution and/or licensing of Defendants' Infringing Motion Pictures as described above, constitute violations of the Copyright Act, 17 U.S.C. 101, *et seq*.

89.    DVD EMPIRE's infringing acts with respect to Defendants' Infringing Motion Pictures have been and continue to be knowing and willful.

90.    By reason of DVD EMPIRE's infringing activities, Plaintiff has sustained and will continue to sustain substantial injury and loss, and damage to its ownership rights of its copyright.

91.    Unless temporarily, preliminarily and permanently enjoined by order of this Court, DVD EMPIRE will continue to infringe said copyrights, all to plaintiff's irreparable injury. Plaintiff is without an adequate remedy at law.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST
### AEBN

92.    EVART repeats, reiterates and realleges each and every paragraph contained in the paragraphs "1" through "91" inclusive, with the same force and effect as though more fully set forth at length herein.

93.    Upon information and belief, beginning in or about 2004 and continuing to date, AEBN has offered for sale, sold, distributed and/or licensed copies of Defendants' Infringing Motion Pictures, both of which include unauthorized copies of Plaintiff's Motion Picture/Plaintiff's DVD.

94.    AEBN has offered for sale, sold, distributed and/or licensed copies of Defendants' Infringing Motion Pictures in packaging bearing unauthorized copies of images from Plaintiff's Motion Picture/Plaintiff's DVD or in conjunction with such images.

95.    AEBN's offering for sale, sale, distribution and/or licensing of Defendants' Infringing Motion Pictures as described above, constitute violations of the Copyright Act, 17 U.S.C. 101, *et seq.*

96.    AEBN's infringing acts with respect to Defendants' Infringing Motion Pictures, have been and continue to be knowing and willful.

97.    By reason of AEBN's infringing activities, Plaintiff has sustained and will continue to sustain substantial injury and loss, and damage to its ownership rights of its copyright.

98.    Unless temporarily, preliminarily and permanently enjoined by order of this Court, AEBN will continue to infringe said copyrights, all to plaintiff's irreparable injury. Plaintiff is without an adequate remedy at law.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST
## VIDEO EXTREME

99.    EVART repeats, reiterates and realleges each and every paragraph contained in the paragraphs "1" through "98" inclusive, with the same force and effect as though more fully set forth at length herein.

100.    Upon information and belief, beginning in or about 2004 and continuing to date, VIDEO EXTREME has offered for sale, sold, distributed and/or licensed copies of Defendants' Infringing Motion Pictures, both of which include unauthorized copies Plaintiff's Motion Picture/Plaintiff's DVD.

101.    VIDEO EXTREME has offered for sale, sold, distributed and/or licensed copies of Defendants' Infringing Motion Pictures in packaging bearing unauthorized copies of images from Plaintiff's Motion Picture/Plaintiff's DVD or in conjunction with such images.

102.    VIDEO EXTREME's offering for sale, sale, distribution and/or licensing of copies of Defendants' Infringing Motion Pictures as described above, constitute violations of the Copyright Act, 17 U.S.C. 101, *et seq.*

103.    VIDEO EXTREME's infringing acts with respect to Defendants' Infringing Motion Pictures, have been and continue to be knowing and willful.

104.    By reason of VIDEO EXTREME's infringing activities, Plaintiff has sustained and will continue to sustain substantial injury and loss, and damage to its ownership rights of its copyright.

105.    Unless temporarily, preliminarily and permanently enjoined by order of this Court, VIDEO EXTREME will continue to infringe said copyrights, all to plaintiff's irreparable injury. Plaintiff is without an adequate remedy at law.

## AS AND FOR AN SIXTH CAUSE OF ACTION AGAINST EMG

106.    EVART repeats, reiterates and realleges each and every paragraph contained in the paragraphs "1" through "105" inclusive, with the same force and effect as though more fully set forth at length herein.

107.    Upon information and belief, beginning in or about 2004 and continuing to date, EMG has offered for sale, sold, distributed and/or licensed copies Defendants' Infringing Motion Pictures, both of which include unauthorized copies of scenes from Plaintiff's Motion Picture/Plaintiff's DVD.

108.    EMG has offered for sale, sold, distributed and/or licensed copies of Defendants' Infringing Motion Pictures in packaging bearing unauthorized copies of images from Plaintiff's Motion Picture/Plaintiff's DVD or in conjunction with such images.

109.    EMG's offering for sale, sale, distribution and/or licensing of copies of Defendants' Infringing Motion Pictures as described above, constitute violations of the Copyright Act, 17 U.S.C. 101, *et seq*.

110.    EMG's infringing acts with respect to Defendants' Infringing Motion Pictures, have been and continue to be knowing and willful.

111.    By reason of EMG's infringing activities Plaintiff has sustained and will continue to sustain substantial injury and loss, and damage to its ownership rights of its copyright.

112.    Unless temporarily, preliminarily and permanently enjoined by order of this Court, EMG will continue to infringe said copyrights, all to plaintiff's irreparable injury. Plaintiff is without an adequate remedy at law.

## AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST VIHARA

113.    EVART repeats, reiterates and realleges each and every paragraph contained in the paragraphs "1" through "112" inclusive, with the same force and effect as though more fully set forth at length herein.

114.    Upon information and belief, beginning in or about 2004 and continuing to date, VIHARA has offered for sale, sold, distributed and/or licensed copies Defendants' Infringing Motion Pictures, both of which include unauthorized copies of scenes from Plaintiff's Motion Picture/Plaintiff's DVD.

115.    VIHARA has offered for sale, sold, distributed and/or licensed copies of Defendants' Infringing Motion Pictures in packaging bearing unauthorized copies of images from Plaintiff's Motion Picture/Plantiff's DVD.

116.    VIHARA's offering for sale, sale, distribution and/or licensing of copies of Defendants' Infringing Motion Picture contained in the packaging described above, constitute violations of the Copyright Act, 17 U.S.C. 101, *et seq.*

117.    VIHARA's infringing acts with respect to Defendants' Infringing Motion Pictures, have been and continue to be knowing and willful.

118.    By reason of VIHARA's infringing activities, Plaintiff has sustained and will continue to sustain substantial injury and loss, and damage to its ownership rights of its copyright.

119.    Unless temporarily, preliminarily and permanently enjoined by order of this Court, VIHARA's will continue to infringe said copyrights, all to plaintiff's irreparable injury. Plaintiff is without an adequate remedy at law.

**WHEREFORE, plaintiff prays for judgment as follows:**

1.    That each Defendant be permanently enjoined from:

(a)    duplicating, reproducing, manufacturing, copying or making available for VOD Services Plaintiff's Motion Picture/Plaintiff's DVD, or any copyrighted motion picture for which plaintiff is the copyright registrant, assignee or exclusive licensee of videocassettes, laser discs, video compact discs, DVD or VOD rights;

(b)    renting, selling, lending, exchanging, trading, distributing or licensing any unauthorized videocassette, laser disc, video compact disc and DVD, or other unauthorized copy of Plaintiff's Motion Picture/Plaintiff's DVD in any medium, including, but not limited to, VOD Services, or any copyrighted motion picture for which plaintiff is the copyright registrant, assignee or exclusive licensee of videocassettes, laser discs, video compact discs and digital video discs rights;

(c)    offering to do any of the acts enjoined in subparagraphs (a) and (b) above;

(d)    from in any manner infringing or contributing to or participating in

the infringement by others of Plaintiff's Motion Picture/Plaintiff's DVD, or of any motion picture that Plaintiff owns rights to or in, and from acting in concert with, aiding or abetting others to infringe any of said motion pictures in any way.

2.    That each Defendant be required to deliver upon oath, to be impounded during the pendency of this action, all negatives, positive film prints, transcriptions, recordings, video masters or videocassettes, laser discs, video compact discs and digital video discs film and video copying machines, held for delivery or under their control, under whatever name as may have been affixed thereto, as are herein alleged to infringe or to have been used to infringe any of the copyrights aforesaid; and that Orders of Seizure in respect of the foregoing be issued out of this Court in the manner provided by the Copyright Act, and the Federal Rules of Civil Procedure; and that at the conclusion of this action, the Court shall order all such material so held to be surrendered to plaintiff or to be destroyed under a Writ of Destruction issued under 17 U.S.C. § 503, whichever shall seem to this Court to be most just and proper;

3.    That, with respect to the First Cause of Action:

(a)    defendant, GENTS, be required to pay to Plaintiff statutory damages of up to $30,000.00 for each infringement of Plaintiff's copyright for a total of up to $60,000.00, and that if the Court finds that any such infringement was committed willfully GENTS be required to pay to Plaintiff statutory damages of up to $150,000.00 for each willful infringement, for a total of up to $300,000.00;

(b)    defendant MICHAEL ESPOSITO be required to pay to Plaintiff statutory damages of up to $30,000.00 for each infringement of Plaintiff's copyright for a total of up to $60,000.00, and that if the Court finds that any such infringement was committed willfully

MICHAEL ESPOSITO be required to pay to Plaintiff statutory damages of up to $150,000.00 for each willful infringement, for a total of up to $300,000.00;

        (c)     defendant SCOTT ESPOSITO be required to pay to Plaintiff statutory damages of up to $30,000.00 for each infringement of Plaintiff's copyright for a total of up to $60,000.00, and that if the Court finds that any such infringement was committed willfully SCOTT ESPOSITO be required to pay to Plaintiff statutory damages of up to $150,000.00 for each willful infringement, for a total of up to $300,000.00;

      3.     That, with respect to the Second Cause of Action:

        (a)     defendant GENTS be required to pay to Plaintiff statutory damages of up to $30,000.00 for each infringement of Plaintiff's copyright for a total of up to $60,000.00, and that if the Court finds that any such infringement was committed willfully GENTS be required to pay to Plaintiff statutory damages of up to $150,000.00 for each willful infringement, for a total of up to $300,000.00;

        (b)     defendant MICHAEL ESPOSITO be required to pay to Plaintiff statutory damages of up to $30,000.00 for each infringement of Plaintiff's copyright for a total of up to $60,000.00, and that if the Court finds that any such infringement was committed willfully MICHAEL ESPOSITO be required to pay to Plaintiff statutory damages of up to $150,000.00 for each willful infringement, for a total of up to $300,000.00;

        (c)     defendant SCOTT ESPOSITO be required to pay to plaintiff statutory damages of up to $30,000.00 for each infringement of Plaintiff's copyright for a total of up to $60,000.00, and that if the Court finds that any such infringement was committed willfully SCOTT ESPOSITO be required to pay to Plaintiff statutory damages of up to $150,000.00 for each willful infringement, for a total of up to $300,000.00;

4.    That, with respect to the Third Cause of Action, defendant DVD EMPIRE be required to pay to Plaintiff statutory damages of up to $30,000.00 for each infringement of Plaintiff's copyright for a total of up to $120,000.00, and that if the Court finds that any such infringement was committed willfully DVD EMPIRE be required to pay to Plaintiff statutory damages of up to $150,000.00 for each willful infringement, for a total of up to $600,000.00;

5.    That, with respect to the Fourth Cause of Action, defendant AEBN be required to pay to Plaintiff statutory damages of up to $30,000.00 for each infringement of Plaintiff's copyright for a total of up to $120,000.00, and that if the Court finds that any such infringement was committed willfully AEBN be required to pay to Plaintiff statutory damages of up to $150,000.00 for each willful infringement, for a total of up to $600,000.00;

6.    That, with respect to the Fifth Cause of Action, defendant VIDEO EXTREME be required to pay to Plaintiff statutory damages of up to $30,000.00 for each infringement of Plaintiff's copyright for a total of up to $120,000.00, and that if the Court finds that any such infringement was committed willfully VIDEO EXTREME be required to pay to Plaintiff statutory damages of up to $150,000.00 for each willful infringement, for a total of up to $600,000.00;

7.    That, with respect to the Sixth Cause of Action, defendant EMG be required to pay to Plaintiff statutory damages of up to $30,000.00 for each infringement of Plaintiff's copyright for a total of up to $120,000.00, and that if the Court finds that any such infringement was committed willfully EAST be required to pay to Plaintiff statutory damages of up to $150,000.00 for each willful infringement, for a total of up to $600,000.00;

8.    That, with respect to the Seventh Cause of Action, defendant VIHARA be required to pay to Plaintiff statutory damages of up to $30,000.00 for each infringement of

Plaintiff's copyright for a total of up to $120,000.00, and that if the Court finds that any such infringement was committed willfully, VIHARA be required to pay to Plaintiff statutory damages of up to $150,000.00 for each willful infringement, for a total of up to $600,000.00;

9.    That Plaintiff recover the profits each Defendant realized from their activities with respect to Defendants' Infringing Motion Pictures;

10.    That Plaintiff recover all of its cost and attorneys' fees herein; and

11.    That Plaintiff has such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        November 14, 2006

Yours, etc.
QUIRK AND BAKALOR, P.C.

BY: _____
H. NICHOLAS GOODMAN (HG7446)
Attorneys for Defendant
EVART ENTERPRISES, INC.,
845 Third Avenue
New York, New York 10022
(212) 319-1000


TO:    GENTLEMEN'S VIDEO, INC.
       21638 Lassen St.
       Chatsworth, California 91311
       (818) 700-7785

       MICHAEL ESPOSITO
       11618 Killmore Avenue
       Northridge, California 91326
       (818) 368-2790

       SCOTT ESPOSITO
       18552 Clark Street Apartment 17
       Tarzana, California 91356
       (818) 705-5702

RIGHT ASCENSION, INC.
704 Dunbury Court
Mars, Pennsylvania 16046
(888) 383-1880

DATA CONVERSIONS, INC.
5300 Old Pineville Road, Suite 152
Charlotte, North Carolina 28217

ABSTINENCE NOW LIMITED, INC.
Via Registered Agent: Jonathan Sims
3708 Morning Mist
Bellingham, Washington 98229

EAST MEDIA GROUP, INC.
275 English Place
Basking Ridge, New Jersey 07920
(814) 941-2922

VIHARA VIDEO, INC.
592 Eighth Avenue
New York, New York 10018



**FORM PA**
FOR A WORK OF PERFORMING ARTS
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

PA    155-898

PA

EFFECTIVE DATE OF REGISTRATION

Nov 12 88
(Month)

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE CONTINUATION SHEET (FORM PA/CON)

**(1) Title**

TITLE OF THIS WORK: DEEP INSIDE ANNIE SPRINKLE

NATURE OF THIS WORK: Audiovisual Work
(Running Time=87 Mins.)

PREVIOUS OR ALTERNATIVE TITLES:

**(2) Author(s)**

IMPORTANT: Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). If any part of this work was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates blank.

**1**
NAME OF AUTHOR: EVART ENTERPRISES INC.

DATES OF BIRTH AND DEATH:
Born (Year)    Died (Year)

Was this author's contribution to the work a "work made for hire"?    Yes X    No

AUTHOR'S NATIONALITY OR DOMICILE:
Citizen of ............. } or { Domiciled in ..U.S. of A.
(Name of Country)                          (Name of Country)

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:
Anonymous?    Yes    No X
Pseudonymous?  Yes    No X
If the answer to either of these questions is "Yes," see detailed instructions attached.

AUTHOR OF: (Briefly describe nature of this author's contribution)
Entire copyrightable content.

**2**
NAME OF AUTHOR:

DATES OF BIRTH AND DEATH:
Born (Year)    Died (Year)

Was this author's contribution to the work a "work made for hire"?    Yes    No

AUTHOR'S NATIONALITY OR DOMICILE:
Citizen of ............. } or { Domiciled in ............
(Name of Country)                          (Name of Country)

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:
Anonymous?    Yes    No
Pseudonymous?  Yes    No
If the answer to either of these questions is "Yes," see detailed instructions attached.

AUTHOR OF: (Briefly describe nature of this author's contribution)

**3**
NAME OF AUTHOR:

DATES OF BIRTH AND DEATH:
Born (Year)    Died (Year)

Was this author's contribution to the work a "work made for hire"?    Yes    No

AUTHOR'S NATIONALITY OR DOMICILE:
Citizen of ............. } or { Domiciled in ............
(Name of Country)                          (Name of Country)

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:
Anonymous?    Yes    No
Pseudonymous?  Yes    No
If the answer to either of these questions is "Yes," see detailed instructions attached.

AUTHOR OF: (Briefly describe nature of this author's contribution)

**(3) Creation and Publication**

YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED:
Year...1981.
(This information must be given in all cases.)

DATE AND NATION OF FIRST PUBLICATION:
Date.... January 22, 1982 *
          (Month)  (Day)  (Year)
Nation United States of America.
          (Name of Country)
(Complete this block ONLY if this work has been published.)

**(4) Claimant(s)**

NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S):
EVART ENTERPRISES INC.
430 West 54th Street
New York, New York  10019

TRANSFER: (If the copyright claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.)

---

• Complete all applicable spaces (numbers 5-9) on the reverse side of this page
• Follow detailed instructions attached    • Sign the form at line 8

DO NOT WRITE HERE
Page 1 of ___ pages



In notice: "1981."

A 153-828

EXAMINED BY ...
CHECKED BY ...
CORRESPONDENCE: ☑ Yes

DEPOSIT ACCOUNT
FUNDS USED: ☐

APPLICATION RECEIVED
12 NOV 1982

DEPOSIT RECEIVED
12 NOV 1982

REMITTANCE NUMBER AND DATE
43001

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED ADDITIONAL SPACE, USE CONTINUATION SHEET (FORM PA/CON)**

**PREVIOUS REGISTRATION:**

• Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office? Yes ........ No X

• If your answer is "Yes," why is another registration being sought? (Check appropriate box)

☐ This is the first published edition of a work previously registered in unpublished form.
☐ This is the first application submitted by this author as copyright claimant.
☐ This is a changed version of the work, as shown by line 6 of the application.

• If your answer is "Yes," give: Previous Registration Number ................... Year of Registration ...........

**(5)**
Previous
Registration

**COMPILATION OR DERIVATIVE WORK:** (See instructions)

PREEXISTING MATERIAL: (Identify any preexisting work or works that the work is based on or incorporates.)

MATERIAL ADDED TO THIS WORK (Give a brief, general statement of the material that has been added to this work and in which copyright is claimed.)

**(6)**
Compilation
or
Derivative
Work

**DEPOSIT ACCOUNT:** (If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.)

Name    Amster, Rothstein & Engelberg

Account Number    DA-055069

**CORRESPONDENCE:** (Give name and address to which correspondence about this application should be sent.)

Name    Philip H. Gottfried, Esq.
Amster, Rothstein & Engelberg
Address:    90 Park Avenue
New York, New York  10016
(City)    (State)    (ZIP)

**(7)**
Fee and
Correspond-
ence

**CERTIFICATION: #** I, the undersigned, hereby certify that I am the: (Check one)

☐ author ☐ other copyright claimant ☐ owner of exclusive right(s) ☑ authorized agent of    FVART ENTERPRISES, INC.
(Name of author or other copyright claimant, or owner of exclusive right(s))

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Handwritten signature: (X) _____

Typed or printed name    Philip H. Gottfried    Date  11/08/82

**(8)**
Certification
(Application
must be
signed)

Philip H. Gottfried, Esq.
AMSTER, ROTHSTEIN & ENGELBERG
(Name)
90 Park Avenue
(Number, Street and Apartment Number)
New York, New York  10016
(City)    (State)    (ZIP code)

**MAIL
CERTIFICATE
TO**

(Certificate will
be mailed in
window envelope)

**(9)**
Address
For Return
of
Certificate

☆ 17 U.S.C. §506(e) FALSE REPRESENTATION - Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

☆ U.S. GOVERNMENT PRINTING OFFICE: 1980-311-439/13

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

EVART ENTERPRISES, INC.,

              Plaintiff,

    -against-

GENTLEMEN'S VIDEO, INC., MICHAEL ESPOSITO,
individually and in his corporate capacity, SCOTT ESPOSITO,
individually and in his corporate capacity, RIGHT ASCENSION,
INC., DATA CONVERSIONS, INC., ABSTINENCE NOW LIMITED
INC., EAST MEDIA GROUP, INC. and VIHARA VIDEO, INC.,

**Civil Action No.:**
**06 Civ. 3583 (LBS)**

---

## VERIFIED COMPLAINT

---

### QUIRK AND BAKALOR, P.C.

*Attorney(s) for* Plaintiff

*Office and Post Office Address, Telephone*

845 Third Avenue
NEW YORK, NEW YORK 10022
(212) 319-1000

---

To

 

Attorney(s) for

Signature (Rule 130-1.1-a)

Print name beneath

Service of a copy of the within is hereby admitted.

Dated:

---

PLEASE TAKE NOTICE:

☐. NOTICE OF ENTRY

that the within is a *(certified) true copy of a*
duly entered in the office of the clerk of the within named court on

☐ NOTICE OF SETTLEMENT

that an order
will be presented for settlement to the HON.
within named Court, at
on                    at             M.

of which the within is a true copy
one of the judges of the

Dated,

                           Yours, etc.

                           **QUIRK AND BAKALOR, P.C.**